UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

J.P. MORGAN CHASE BANK, :
N.A. :
 :
     v. : C.A. No. 11-246ML
 :
M/Y BRITTANY LEIGH II :
(O.N. 1073831), in rem, and :
JONATHAN P. RAYBURN, :
in personam :

# REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

    Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72(a)) is Plaintiff's Motion to Dismiss Count IV of Greenwich Bay Enterprises Inc.'s (the "Marina") Intervenor Complaint. (Document No. 16). The Marina opposes the Motion. (Document No. 18). Neither party has requested oral argument, and it is not necessary to resolve this Motion.

    **Background**

    Plaintiff (the "Bank") commenced this admiralty action on June 16, 2011 to arrest a 1998 thirty-five foot Carver motor yacht and to foreclose on a preferred ship mortgage. The Bank alleges an outstanding indebtedness of $103,406.89 and asserts that, "[g]iven its age and present condition, the vessel is worth substantially less than the mortgage indebtedness owed to [the Bank]." (Document No. 1 at ¶ 14 and No. 16 at p. 3).

On July 18, 2011, the Marina intervened with leave of court[1] and made claims against the vessel, the owner and the Bank/Mortgagee, for $7,544.26 plus interest, collection and recovery costs, fees and expenses. (Document No. 15). The Marina appends a "Ledger Card" to its Intervenor Complaint which identifies Mr. Rayburn as the customer and the Brittany Leigh II as the boat. (Document Nos. 10-1 and 10-2). The Ledger Card is dated June 24, 2011 and itemizes various dockage and storage fees (as well as numerous late fees) incurred between December 19, 2006 and May 31, 2011. Id. These fees total $7,544.26.[2]

**Discussion**

The Bank moves to dismiss Count IV of the Marina's Intervenor Complaint alleging unjust enrichment. In Count IV, the Marina alleges that in 2006 Mr. Rayburn requested that it provide "certain goods and services to him and for his benefit and the benefit and preservation of" the vessel. (Document No. 15 at ¶ 25). The Marina alleges that the goods and services "directly benefited" [sic] the Bank/Mortgagee since they "were directly related to the protection and preservation of" the vessel. Id. at ¶ 28. Thus, the Marina alleges that the Bank has been unjustly enriched at its expense and seeks a judgment directly against the Bank for the dockage and storage fees allegedly owed by Mr. Rayburn. The Bank asserts that its preferred ship mortgage has priority under federal law over a claimed lien for storage services provided to the vessel at the owner's request after the mortgage was recorded. Further, it argues that the Marina's attempt to sue the Bank directly for unjust

---

[1] Although the Marina was allowed to intervene, Chief Judge Lisi left the issue of the viability of the Marina's unjust enrichment claim to another day. (Document No. 14).

[2] The Ledger Card reflects several partial payments made by Mr. Rayburn in 2007 and 2008. Interestingly, there is a notation dated June 3, 2011 indicating receipt of an "amex pmnt" in the amount of $7,450.75 (leaving a balance due of only $93.51) but then on June 10, 2011 a notation of a "cust refund" of the full amount of the payment.

enrichment under such circumstances fails as a matter of law and is a legally flawed attempt to circumvent the Bank's priority lien. I agree.

"Under the Ship Mortgage Act, the holder of a preferred mortgage on a maritime vessel that is in default may enforce the terms of that mortgage by bringing an action against the vessel in rem and an action against the owner in personam." Goldfish Shipping, S.A. v. HSH Nordbank AG, No. 07-3518, 2008 U.S. Dist. Lexis 93135 at *12 (E.D.Pa. Nov. 3, 2008) (citing 46 U.S.C. § 31325(b)). "In the in rem action, the mortgagee names the vessel itself as a defendant, and the vessel is seized and sold in a judicial sale." Id. "The proceeds of the sale, the "res," are deposited with the court and used to compensate the preferred mortgage holder and other creditors, with the preferred mortgage holder having priority over the claims of other creditors." Id. (citing 46 U.S.C. § 31326(b)).

Here, in 1998, the Bank's predecessor publicly recorded or filed its preferred ship mortgage for the Brittany Leigh II with the Coast Guard's National Vessel Documentation Center. (Document No. 1-3). On September 7, 2004, an assignment of such preferred mortgage to the Bank was also publicly recorded. Pursuant to 46 U.S.C. § 31321(a)(2), a filed ship mortgage "is valid against any person from the time it is filed...." Further, under federal law, a preferred ship mortgage has "priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens)." 46 U.S.C. § 31326(b)(1) (emphasis added). Preferred maritime liens are delineated in 46 U.S.C. § 31301(5) and do not include any categories that would potentially cover accrued storage expenses of the nature claimed by the Marina. Further, the Marina does not allege the existence of a "preferred maritime lien" which would have priority over a preferred ship mortgage.

While federal law also recognizes the existence of a general maritime lien when a person provides "necessaries" to a vessel on the order of its owner or the owner's agent, 46 U.S.C. § 31342(a)(1), such lien is subordinate to a preferred ship mortgage. See Faneuil Advisors, Inc. v. O/S Sea Hawk, 50 F.3d 88, 92 (1st Cir. 1995) (holding that liens for necessaries are ordinary and subordinate to a preferred ship mortgage); and Key Bank of Puget Sound v. Alaskan Harvester, 738 F. Supp. 398, 401 (W.D. Wash. 1989) (recognizing that a general maritime lien for necessaries is subordinate to a lien created by a preferred ship mortgage). Thus, even if the storage services provided by the Marina constituted "necessaries" under the law, see 46 U.S.C. § 31301(4) (defining necessaries), the Marina's claim would still be subordinate to the Bank's preferred ship mortgage as a matter of federal law.

Even accepting the Marina's allegations as true, as the Court must in construing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Marina fails to state any legally viable claim for unjust enrichment against the Bank under these circumstances. The Marina alleges that it provided marine storage services to its customer, Mr. Rayburn, over several years and he did not fully pay. There is no allegation that the Bank requested the storage services or promised payment for such services to the Marina. The Bank held a previously recorded ship mortgage on the vessel which placed the Marina on "constructive notice" of the Bank's lien before it provided the storage services in issue to Mr. Rayburn for the vessel. See L&L Electronics, Inc. v. M/V Osprey, 764 F. Supp. 2d 270, 274 (D. Mass. 2011) (recognizing that a recorded ship mortgage places a party on "constructive notice" of the existence of the priority lien).

In essence, the Marina is attempting to shift the financial business risk of providing services to Mr. Rayburn without prepayment or other security from it to the Bank – a third-party, secured

creditor. While the Bank may have accrued some indirect benefit in preserving the value of its secured collateral from the Marina's storage services, such indirect benefit does not, as a matter of federal maritime law, trump the Bank's preferred ship mortgage, and, as a matter of state law, does not constitute unjust enrichment. "To establish a claim for unjust enrichment under Rhode Island law, a plaintiff must prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff; (2) there must be appreciation by the defendant of such benefit; and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof." Metro. Life Ins. Co. v. Drainville, No. CA 07-427ML, 2009 WL 1209473 at *3 (D.R.I. May 4, 2009) (citing APG, Inc. v. MCI Telecomms. Corp., 436 F.3d 294, 305 (1st Cir. 2006)). The Marina did not directly confer any benefit on the Bank. Rather, it provided storage services to Mr. Rayburn at his request, and he did not pay. Thus, in Counts II and III, the Marina brings claims for breach of contract and unjust enrichment directly against Mr. Rayburn. Since the Bank did not guarantee Mr. Rayburn's payment for such services, his failure to perform, i.e., to make timely payment for the services, does not create a cause of action against the Bank for payment in the form of an unjust enrichment claim merely because the Bank was a secured creditor of Mr. Rayburn. The Marina's allegations do not plead any circumstances which could reasonably be construed as unjust or inequitable. The Bank holds a recorded mortgage on the vessel which has priority over the Marina's claims as a matter of federal maritime law. The Marina alleges no contract or communication with the Bank suggesting its responsibility for payment of Mr. Rayburn's storage bill. The Marina provided storage services to Mr. Rayburn and has a direct claim against him for nonpayment. The Marina simply does not state any legally viable claim against the Bank for the payment of such expenses or any claim for payment against the vessel

superior to the Bank's secured lien. Further, the Marina does not cite any legal precedent in its Opposition (Document No. 18) which supports the existence of such a claim against a secured creditor in this admiralty context. Thus, I recommend that its claim against the Bank for unjust enrichment (Count IV) be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**Conclusion**

For the foregoing reasons, I recommend that the Bank's Motion to Dismiss Count IV of the Marina's Intervenor Complaint (Document No. 16) be GRANTED. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 23, 2011