UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JP MORGAN CHASE BANK, N.A., Plaintiff :
and GREENWICH BAY ENTERPRISES, INC., :
Plaintiff Intervenor :
 :
v. : C.A. No. 11-246 ML
 :
M/Y BRITTANY LEIGH II (O.N. 1073831), :
her engines, tackle, equipment, and :
appurtenances in rem, and :
JONATHAN P. RAYBURN, in personam :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

**Background**

Before the Court is Plaintiff Intervenor's Motion for Summary Judgment on Counts II and III of its Verified Complaint (Document No. 30) filed pursuant to Fed. R. Civ. P. 56. In Count II, Plaintiff Intervenor Greenwich Bay Enterprises, Inc. ("Plaintiff Intervenor") alleges that Jonathan P. Rayburn ("Rayburn") breached an implied contract for goods and services in connection with the preservation of Rayburn's vessel, M/Y BRITTANY LEIGH II (O.N. 1073831) (the "Vessel"), by failing to pay the Plaintiff Intervenor the reasonable value of the goods and services provided. (Document No. 15) In Count III, Plaintiff Intervenor alleges that Rayburn has been unjustly enriched at the expense of Plaintiff Intervenor by failing to pay the reasonable value of such goods and services. Id.

Plaintiff Intervenor filed its Motion for Summary Judgment (Document No. 30) and Memorandum of Law (Document No. 30-1) on November 23, 2011. Rayburn, a pro se litigant, objected to Plaintiff Intervenor's Motion and filed his "Response Against A Summary Judgment on

Count 2 + 3" (Document No. 31) on November 30, 2011. This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). A hearing was held on January 5, 2012. After reviewing the Memoranda submitted, listening to the arguments of the parties and conducting independent research, I recommend that Plaintiff Intervenor's Motion for Summary Judgment on Counts II and III of its Verified Complaint be GRANTED in part and DENIED in part.

**Statement of Facts**

Plaintiff Intervenor is a Rhode Island corporation that operates a full service marina known as Greenwich Bay Marina (the "Marina"). (Document No. 15, ¶ 1). On December 19, 2006, Rayburn engaged Plaintiff Intervenor to haul, block and store Defendant's Vessel. (Document No. 30-2, ¶ 7). From the Ledger Card associated with Rayburn's account at the Marina, it appears that the vessel was hauled and primarily stored on land with the exception of some dockage fees incurred during the summer of 2008. (Document Nos. 10-1 and 10-2). On December 20, 2006 and thereafter, Plaintiff Intervenor provided such services until the Court-ordered arrest of the Vessel on June 24, 2011. (Document 30-2, ¶ 8). Rayburn made periodic payments on the outstanding balance on the account until October 31, 2008, after which he failed to make any further payments for the services being provided. (Document Nos. 10-1 and 10-2). Rayburn was consistently in arrears on his account and incurred numerous monthly late fees. Id.

On April 30, 2011, the balance due for the goods and services was $7,450.75. (Document No. 31, p. 4). On May 31, 2011, the amount owed increased to $7,544.26 following a $93.51 late fee assessment. (Document No. 10-2). On June 3, 2011, Plaintiff Intervenor apparently received a payment from the Vessel's Mortgagee in the amount of $7,450.75, which, according to Plaintiff

Intervenor's Counsel, was conditioned as full and final payment of all amounts owed. Because the payment sent by the Vessel's Mortgagee did not cover the full amount of the $7,544.26 amount due, Plaintiff Intervenor did not accept the payment and returned the payment on June 10, 2011. (Document No. 10-2). As of November 22, 2011, the unpaid balance on Rayburn's account is $7,991.30 inclusive of $2,010.85 in late fees. (Document Nos. 10-1, 10-2 and 30-2, ¶ 11).

Rayburn does not dispute that Plaintiff Intervenor provided storage and other marina services for the Vessel. Rather, he argues that Plaintiff Intervenor was "paid in full" and its decision to return the payment "should have no further bearing on me." (Document No. 31, p. 1).

**Summary Judgment Standard**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23

F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

**Discussion**

**1.    Plaintiff Intervenor is Entitled to Summary Judgment on Count II for Breach of an Implied Contract**

An enforceable contract is made when there has been an offer, followed by acceptance, manifesting the parties' objective intent to be bound by the agreement. Weaver v. Am. Power Conversion Corp., 863 A.2d 193, 198 (R.I. 2004). To establish an enforceable express or implied contract, a litigant must prove "mutual assent" or a "meeting of the minds between the parties." Mills v. Rhode Island Hosp., 828 A.2d 526, 528 (R.I. 2003) (quoting J. Koury Steel Erectors, Inc. of Massachusetts v. San-Vel Concrete Corp., 120 R.I. 360, 365, 387 A.2d 694, 697 (1978)). An

-4-

implied contract (also referred to as an "implied-in-fact contract") is "a form of express contract wherein the elements of the contract are found in and determined from the relations of, and the communications between the parties, rather than from a single clearly expressed written document." Marshall Contractors, Inc. v. Brown Univ., 692 A.2d 665, 669 (R.I. 1997).

Rayburn does not dispute that he contacted Plaintiff Intervenor to request services for the benefit of Rayburn and his Vessel. These services included hauling, blocking, storing and dockage for Rayburn's Vessel over a period of approximately six years. In exchange for these services, Rayburn was obligated to pay Plaintiff Intervenor, which included late fees for tardy payments on these terms. The undisputed facts here clearly establish an offer and acceptance of marina and storage services in exchange for payment. Furthermore, Rayburn's periodic payments from December 2006 through October 2008 evidence his intent to be bound by the agreement with Plaintiff Intervenor. Likewise, Plaintiff Intervenor's continued storage of the Vessel for Rayburn's benefit through 2011 evidence its intention to likewise be bound. Therefore, because the facts indicate that both parties intended to be bound by this agreement for the provision of marina services in exchange for payment, an implied contract existed. Because Rayburn failed to pay the outstanding amount due, Rayburn is in breach of the implied contract.

Rayburn contends that he attempted to pay the full balance due – the $7,450.75 due as of April 30, 2011 – by having his "bank in this matter"[1] send payment for that amount to the Plaintiff Intervenor. (Document No. 31, pp. 3-4). However, the Ledger Card provided by Plaintiff Intervenor, and not contested by Rayburn, indicates that the payment was not received until June 3, 2011, at which time the balance had increased – due to an additional late fee assessment for May,

---

[1] At the hearing, Defendant explained that he was attempting to roll the unpaid Marina bill into the mortgage balance on the Vessel, but that was never completed.

2011 of $93.51 – to a total balance due of $7,544.26.  (See Document No. 10-2).  Plaintiff Intervenor therefore returned the payment.  During oral argument, the parties did not dispute the fact that an attempt was made to pay the balance due to Plaintiff Intervenor.  Instead, Plaintiff Intervenor argued that payment was returned because it came with a "string attached" that it would constitute "full and final payment of all amounts owed."  Because the amount owed had increased from $7,450.75 to $7,544.26, the payment was not a full payment, and acceptance under the proposed condition would preclude recovery of any additional amounts under the doctrine of accord and satisfaction.[2] Finnegan v. Verdonne, 2004 WL 2075123 at *3 (R.I. Super. Aug. 13, 2004) ("a creditor's acceptance of a check <u>explicitly tendered as payment in full</u> of an unliquidated or disputed obligation discharges the underlying obligation by accord and satisfaction") (emphasis in original).  Plaintiff Intervenor refused the payment and brought this action for the full balance due plus attorneys' fees and other collection expenses.  Accordingly, Plaintiff Intervenor has established the entitlement to summary judgment against Rayburn on Count II (implied contract) of its Verified Complaint in the amount of $7,991.30, and I so recommend.

    **2.**    **Costs of Collection**

In its Affidavit, Plaintiff Intervenor states that it "has incurred costs of collection, (including costs associated with foreclosure of its state law statutory lien against the vessel, <u>and attorney's fees</u>) of $5,000.00 and fairly anticipates it will incur further costs and fees in connection with this action of $5,000.00."  (Document No. 30-2, ¶ 13) (emphasis added).  However, in its Memorandum, Plaintiff Intervenor prays for an award of $12,991.30 (presumably the $7.991.30 in damages plus the $5,000.00 for costs of collection) and "interest, costs of this action <u>and attorneys' fees pursuant</u>

---

[2] It appears that Plaintiff Intervenor made an unsuccessful attempt to sell the Vessel at an auction to foreclose on its claimed storage lien and also sought to recoup those expenses in addition to the balance due on the account.

to R.I.G.L. Section 9-1-45 and expenses accruing up to the date on which such judgment is entered" (presumably the $5,000.00 in attorneys' fees). (See Document No. 30-1, p. 6) (emphasis added). Plaintiff Intervenor therefore fails to clearly articulate how much it is seeking in attorneys' fees and how much it is seeking for costs of collection and the legal bases therefor. Some clarification is given in Plaintiff Intervenor's argument for attorneys' fees, where Plaintiff Intervenor explicitly states that it "prays the court may award reasonable attorney fees in the sum of $5,000.00," which suggests that the remaining $5,000.00 is to be attributed to the costs of collection. Id.

Assuming that Plaintiff Intervenor is in fact seeking consequential damages, of any amount, for the costs of collection, it bears the burden of establishing entitlement to such damages both as a matter of fact and law. Plaintiff Intervenor fails on both accounts. First, it provides absolutely no legal support for its claim for an award of costs of collection under these circumstances. As previously stated, an implied contract is "a form of express contract wherein the elements of the contract are found in and determined from the relations of, and the communications between the parties, rather than from a single clearly expressed written document." Marshall Contractors, Inc., 692 A.2d at 669.

Plaintiff Intervenor provides absolutely no legal support for its claim of entitlement to an award of costs of collection. See United States v. Mathur, 624 F.3d 498, 508 (1st Cir. 2010) ("[i]t is not our job to put flesh on the bare bones of an underdeveloped argument...and the [party's] plaint could be rejected for that reason alone"); and Pike v. Guarino, 492 F.3d 61, 79 n.9 (1st Cir. 2007) ("[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and push flesh on its bones."). Plaintiff Intervenor references costs associated with "foreclosure of its state law statutory lien" but

does not provide the applicable statutory citation or any other documents or information regarding this alleged lien. Also, Plaintiff Intervenor has not provided any evidence of any communications between Plaintiff Intervenor and Rayburn regarding any potential costs of collection, and instead has only provided evidence of the parties' initial agreement to enter into an agreement of marina services in exchange for payment plus monthly late fees. (See Document No. 30-2). The mere assertion that such costs of collection exist does not evidence any intention between the parties to have such costs be included within the agreement. Bailey v. West, 249 A.2d 414, 416 (R.I. 1969) ("such a contract does not arise out of an implied legal duty or obligation, but out of facts from which consent may be inferred") (emphasis added).

Finally, although Plaintiff Intervenor's Affidavit asserts $5,000.00 in "incurred costs of collection" and another $5,000.000 in "fairly anticipated" costs, it is entirely conclusory and provides absolutely no description or substantiation of such costs. Plaintiff Intervenor has simply not shown a legal or factual entitlement to summary judgment beyond the $7,991.30 balance due and owing on Rayburn's account, inclusive of late fees.

**3. Attorneys' Fees**

Pursuant to R. I. Gen. Laws § 9-1-45 entitled "Attorney's fees in breach of contract actions," the Court, in its discretion, "may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court: (1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or (2) Renders a default judgment against the losing party."

Here, Plaintiff Intervenor is seeking an award of its attorneys' fees from Rayburn in the amount of $5,000.00. Therefore, the issue is whether Rayburn has raised any justiciable issue of

either law or fact. During oral arguments, Rayburn asserted that he was not aware of the full and final payment condition attached to the payment sent to Plaintiff Intervenor. Additionally, both parties concede that Rayburn had made several payments in the past, and had attempted to arrange a full payment for the balance that was due on April 30, 2011. (See Document No. 10-2). Therefore, while the defenses to liability raised by Rayburn are not convincing, they do raise an issue of circumstance – that Rayburn attempted to arrange a full payment of the balance due as of April 30, 2011 without considering the possibility of another late fee assessment and without apparent knowledge of the condition attached by the Vessel's Mortgagee to the receipt of the payment. Thus, there was not a "complete absence of a justiciable" issue of law or fact raised by Rayburn in defense. Bearing in mind that an award of attorneys' fees under R.I. Gen. Laws § 9-1-45 is discretionary, I conclude that an award of fees is not compelled by these circumstances and recommend that the Court deny Plaintiff Intervenor's request for statutory attorneys' fees in the amount of $5,000.00. See UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp., 641 A.2d 75, 80 (R.I. 1994) (request for statutory attorneys' fees denied where the losing party presented a justiciable issue even though the evidence eventually proved to be legally deficient).

**4.     Plaintiff Intervenor's Claim in Count III for Unjust Enrichment**

Because I have already determined that Plaintiff Intervenor is entitled to Summary Judgment on its Breach of Implied Contract claim, it is unnecessary to address its claim for Unjust Enrichment since both claims seek compensation for the same amounts, and Plaintiff Intervenor is not entitled to double recovery. In addition, a party need only resort to the remedy of unjust enrichment in the absence of a contractual entitlement to relief.

**Conclusion**

For the reasons stated, I recommend that Plaintiff Intervenor Greenwich Bay Enterprises's Motion for Summary Judgment (Document No. 30) against Defendant Rayburn be GRANTED as to liability on Count II (implied contract) in the amount of $7,991.30 and otherwise DENIED; and DENIED as moot as to Count III (unjust enrichment).

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 15, 2012